UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HOME DESIGN SERVICES, INC.,**

        **Plaintiff,**

**vs.**                        **Case No. 6:03-cv-1860-Orl-19KRS**

**HIBISCUS HOMES OF FLORIDA, INC.,**
**and PIERRE MARSAN,**

        **Defendants.**

_____

## ORDER

This case comes before the Court on the following:

1.     Motion to Strike Plaintiff's Expert Witness William Nunez, filed by Defendants Hibiscus Homes of Florida and Pierre Marsan.  (Doc. No. 84, filed on August 11, 2005);

2.     Plaintiff's Response to Defendants' Motion to Exclude Plaintiff's Expert William Nunez, filed by Plaintiff Home Design Services, Inc. (Doc. No. 85, filed on August 22, 2005);

3.     The United States Magistrate Judge's Order that Plaintiff file and serve a supplemental response by October 3, 2005, addressing the contention that the expert report of William Nunez was not timely served.  (Doc. No. 94, filed on September 26, 2005); and

4.     Plaintiff's Supplemental Response to Defendant's Motion to Exclude Plaintiff's Expert William Nunez.  (Doc. No. 97, filed on October 3, 2005).

**Background**

This case involves an action for copyright infringement brought by Plaintiff against Defendants, a homebuilder and its principal officer.  In support of its case, Plaintiff in April 2005 retained the services of William Nunez, a purported expert regarding profits attributable to the infringement of a home design in northern Florida.  (See Doc. No. 84-2, Ex. A, Report of William Nunez ,dated April 26, 2005).  Pursuant to the Case Management and Scheduling Order ("CMSO") issued by the Court, Plaintiff's disclosure of expert reports was due on February 21, 2005.  (Doc. No. 43, p.1,  filed on May 21, 2004).  It is undisputed that Plaintiff did not disclose the expert report of William Nunez until May 9, 2005, seventy-seven (77) days after the CMSO's deadline.[1]   (Doc. No. 84-1, p.2) ("On May 9, 2005, Plaintiff...mailed to Defendants, the untimely expert report of William Nunez.").

Accordingly, Defendants now move to strike the Plaintiff's expert witness report as untimely.  Defendants also contend that under the standard set by *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), William Nunez's proffered testimony should be excluded, arguing that Mr. Nunez's report exceeds the scope of rebuttal evidence, is based on matter on which he is unqualified to render an opinion, is wholly unreliable, and offers no conclusions to assist the trier of fact.  Defendants also seek sanctions against Plaintiff pursuant to 28 U.S.C. § 1927 for allegedly "unreasonably and vexatiously" multiplying the proceedings in this case.  In response, Plaintiff argues that Mr. Nunez is qualified to testify,

---

[1] The Court did not receive a copy of William Nunez's report until August 11, 2005, when it was attached to Defendants' Motion to Strike.  (Doc. No. 84-2).  Plaintiff admits in its Supplemental Response, however, that Mr. Nunez's report was served on Defendants on May 9, 2005.  (Doc. No. 97, p. 2).

his testimony meets the standards for admissibility under Federal Rule of Evidence 702, and that because his testimony is admissible, sanctions are clearly unwarranted.

After examining the legal memoranda at issue, the United States Magistrate Judge noted on September 26, 2005 that Plaintiff failed to address in its Response the contention that William Nunez's expert report should be stricken because of its untimeliness. (Doc. No. 94). Accordingly, the Judge ordered that on or before October 3, 2005, Plaintiff should file a supplemental response addressing the timeliness issue. (*Id.*) On October 3, Plaintiff filed its Supplemental Response. (Doc. No. 97). In it, Plaintiff argues that Mr. Nunez's expert report was introduced solely to rebut the report of Defendants' expert, Dr. Fishkind, and as such was due thirty (30) days after the disclosure of Defendants' expert report. (*Id*. at p. 2). Plaintiff notes that under Federal Rules of Civil Procedure 6(e) and 26(a)(2)(C), Mr. Nunez's report was due on May 5, 2005, and states that such report was served on May 9, 2005. (*Id*.) Plaintiff argues that the four-day delay in filing Mr. Nunez's report was harmless and promptly cured and that striking the report due to such a small delay is too harsh a sanction. (*Id*. at p. 2-4).

This Order addresses Defendants' Motion to Strike and Plaintiff's Responses.

## Standard of Review

### A.  Timely Disclosure of Expert Witness Reports

Rule 26(a) of the Federal Rules of Civil Procedure requires the parties to provide initial disclosures, and Rule 26(a)(2)(A)-(B) requires parties who retain expert witnesses to disclose these witnesses to opposing counsel with detailed reports, pursuant to the case

management and scheduling order.  Fed. R. Civ. P. 26(a).  Federal Rule 37(c)(1) states, in

pertinent part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording the other party to be heard, may impose other appropriate sanctions.  In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1).  "Substantial justification requires justification to a degree that

could satisfy a reasonable person that parties could differ as to whether the party was

required to comply with the disclosure request.  The proponent's position must have a

reasonable basis in law and fact.  The test is satisfied if there is [a] genuine dispute

concerning compliance." *Ellison v. Windt*, No. 6:99-cv-1268-Orl-KRS, 2001 WL 118617,

at *2 (M.D. Fla., Jan. 24, 2001) (quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680

(D.Kan.1995) (internal citation omitted).  Failure to timely make the required expert witness

disclosures is harmless when the party entitled to the disclosure suffers no prejudice.  *Id.*

(citing *Nguyen*, 162 F.R.D. at 680) (internal citations omitted).

Furthermore, Federal Rule of Civil Procedure 26(a)(2)(C) states that expert witness

disclosures "shall be made at the times and in the sequence directed by the court."  Fed. R.

Civ. P. 26(a)(2)(C).  However, "if the evidence is intended solely to contradict or rebut

evidence on the same subject matter identified by another party under paragraph (2)(B),"

then such expert witness evidence is due "within 30 days after the disclosure made by the

other party."  *Id.*  The District Court is afforded broad discretion in governing discovery

matters and in sanctioning discovery abuse.  *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536,

1542 (11th Cir.1993) (a district court has "broad discretion to fashion appropriate sanctions

for violations of discovery orders").

## B. *Daubert* and Federal Rule of Evidence 702

The requirements for the admission of expert testimony in light of *Daubert* are well

known:

> Expert testimony may be admitted into evidence if: (1) the expert is qualified
> to testify competently regarding the matters he intends to address; (2) the
> methodology by which the expert reaches his conclusions is sufficiently
> reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the
> testimony assists the trier of fact, through the application of scientific,
> technical or specialized expertise, to understand the evidence or to determine
> a fact in issue.

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir.1998) (footnote

omitted).  There are thus three discrete inquiries: qualifications, relevance, and reliability.

*See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th

Cir.2003) (although there is "some overlap" among these inquiries, they "are distinct

concepts that courts and litigants must take care not to conflate.").   The burden of

establishing these three requisites lies with the proponent of the evidence.  *United States v.

Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004) (*en banc*).

An expert may be qualified "by knowledge, skill, experience, training, or education."

Fed. R. Evid. 702.  An expert is not necessarily unqualified simply because her experience

does not precisely match the matter at hand.  *See Maiz v. Virani*, 253 F.3d 641, 665 (11th

Cir.2001); *id*. at 669.  To the requirement of Rule 401 that evidence possess a "tendency to

make the existence of any fact that is of consequence to the determination of the action more

probable or less probable," Rule 702 adds that expert evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* The evidence must "concern matters that are beyond the understanding of the average lay person....[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63. In addition, the expert evidence "must have a valid scientific connection to the disputed facts in the case." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir.1999). That is, there must be an adequate "fit" between the evidence and the case. *Rider v. Sandoz Pharmaceuticals Corp.*, 295 F.3d 1194, 1202 (11th Cir.2002) (no "fit" where attempting to extrapolate animal studies to the human sphere).

The most heavily litigated component of the *Daubert* analysis is reliability. Expert testimony "must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning more than subjective belief or unsupported assumptions." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir.2004). Rule 702 identifies three components of the reliability element: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. *Daubert* also identifies several non-exclusive factors that a court may consider as appropriate in gauging the reliability of the principles and methods utilized by the expert: (1) whether the methodology has been, or is amenable to, testing; (2) whether it has been subjected to peer review and/or publication; (3) the known and potential error rate of the methodology; and (4) whether it has been generally accepted in the relevant scientific

community. *Daubert*, 509 U.S. at 593-94. "Notably, ... these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir.2003). Among such factors, "[i]n evaluating the reliability of an expert's method, ... a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n. 7 (11th Cir.2005).

Whatever factors are considered, the Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison v. McGhan Medical Corp.*, 184 F.3d at 1312 (internal quotes omitted). It is therefore error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions. *Quiet Technology,* 326 F.3d at 1341. "[A] district court may not exclude an expert because it believes the expert lacks personal credibility because of prior bad acts or other prior instances of untruthfulness." *Rink v. Cheminova*, 400 F.3d at 1293 n. 7. With respect to the third reliability criterion of Rule 702, errors in an expert's application of a reliable method generally implicate credibility rather than reliability. *See Quiet Technology*, 326 F.3d at 1345-46 (using incorrect numbers in a reliable formula is not grounds for exclusion under Daubert ).

Finally, "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough [to carry the proponent's burden]." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir.2005). Similarly, "nothing in either *Daubert* or the Federal Rules

of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Id*. at 1111 (internal quotes omitted).  An expert's unexplained assurance that her opinions rest on accepted principles fares no better. *McClain v. Metabolife International, Inc*., 401 F.3d 1233, 1222 (11th Cir.2005).  Moreover, "[t]he Daubert requirement that the expert testify to scientific knowledge – conclusions supported by good grounds for every step in the analysis – means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain v. Metabolife*, 401 F.3d at 1245 (internal quotes omitted); *see also Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir.2003) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion.").

## Analysis

### A.  Timely Disclosure of Expert Witness Reports

Plaintiff is correct in arguing that an expert witness's rebuttal report filed only four days late, months before both the close of discovery and the date which summary judgment motions were due, would not unfairly prejudice or surprise a defendant and thus the late filing would constitute harmless error in the Eleventh Circuit.  *See Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978); *Collins v. Beazer Homes USA, Inc*., 334 F.Supp.2d 1365 (N.D. Ga. 2004).  However, after examining the report and the conclusions articulated by Mr. Nunez in his report, the Court finds that Plaintiff is incorrect in its assertion that Mr. Nunez's report offers solely rebuttal evidence.  Federal Rule of Civil Procedure 26(a)(2)(C) allows expert rebuttal evidence to be filed thirty (30) days after the disclosure of the other

party only if "the evidence is intended *solely* to contradict or rebut evidence on *the same subject matter* identified by another party." Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). In this case, the expert report of Mr. Nunez does not solely rebut the report of the Defendants' expert, but both rebuts the report of Dr. Fishkind and offers separate and distinct analysis.

In his report, Mr. Nunez notes several purported flaws in Dr. Fishkind's analysis which are accurately described as rebuttal evidence. For example, Mr. Nunez calls into question Dr. Fishkind's use of the concept of "Return to Equity," and Dr. Fishkind's decision to give "little importance" to the design of the home when calculating which factors contribute to a builder's net profits. (*See* Doc. 84-2, Ex. A, ¶¶ 7-8). This portion of Mr. Nunez's report is clearly rebuttal evidence, and the Court finds it cannot be excluded on untimeliness grounds. *See* Fed. R. Civ. P. 26(a)(2)(C).

However, Mr. Nunez also engages in analysis and offers conclusions which exceed what can reasonably be called "rebuttal evidence." Mr. Nunez states in his report that "it is not possible to apportion profits from the sale of houses in this report based on any objective factual standard and ... 100% of the profits must be considered attributable to the infringement." (*Id*. at ¶ 5). He also concludes that "in the absence of an objective standard, based upon my experience in the industry at least 75% of the profits of a home are derived from the home design itself." (*Id.*) Mr. Nunez does not tie these conclusory statements to Dr. Fishkind's report or any of the materials used in Dr. Fishkind's report. These assertions in Paragraph 5 of Mr. Nunez's report cannot reasonably be classified as rebuttal evidence, as they represent independent analysis which should have been disclosed by February 21,

2005, as dictated in the CMSO.  Non-rebuttal, expert evidence which casts doubt on an opposing expert's report cannot be admitted under the thirty-day period for rebuttal evidence provided in Rule 26(a)(2).  *See Daly v. FESCO Agencies NA Inc.*, 108 Fed.Appx. 476, 480 (9th Cir. 2004) (district court did not abuse its discretion in admitting part of an expert report's addendum which rebutted the opposing party's expert report and excluding another part of the addendum which cast doubt on the opposing expert's conclusions based on new analysis and experimentation).

Thus, because the quoted sections of Paragraph 5 of Mr. Nunez's report go beyond the scope of rebuttal evidence, do not fall within the ambit of Federal Rule of Civil Procedure 26(a)(2)(C), and were disclosed to opposing counsel seventy-seven (77) days after the deadline provided in the CMSO, they should be excluded from trial for lack of a substantial justification for the delay.  Fed. R. Civ. P. 37(c)(1).

## B.  *Daubert* and Federal Rule of Evidence 702

Even if Plaintiff's proffered expert witness testimony was admissible on procedural grounds, such evidence must be excluded under Federal Rule of Evidence 702.  Plaintiff has failed to meet its burden of showing that Mr. Nunez is qualified to rebut the expert witness testimony of Defendants' expert Dr. Fishkind.  In addition, Plaintiff has likewise failed to meet its burden of establishing that Mr. Nunez's testimony is based upon sufficient facts or data, and that the methodology used by Mr. Nunez is reliable.  *See* Fed. R. Evid. 702; *Frazier*, 387 F.3d at 1260.

First, Plaintiff has failed to demonstrate that Mr. Nunez is sufficiently "qualified by knowledge, skill, experience, training or education" to rebut the opinion of Defendants'

-10-

expert Dr. Fishkind.  Dr. Fishkind, the Defendants' expert witness, has a Ph.D. in economics and has over twenty years of experience in economic analysis and forecasting.  (See Doc. 84-2, Ex. B).  His report consists of an economic modeling analysis which was used to determine how much profit from a home sale could reasonably be attributed to the allegedly infringed house plans at issue in this case.  (*Id*.)  In preparing this analysis, Dr. Fishkind relied on his educational background, accepted economic and financial techniques, and the financial data and records of Defendants relating to the homes at issue.  (*Id*.)

The Plaintiff seeks to admit the opinion of Mr. Nunez that Dr. Fishkind's analysis is flawed.  Mr. Nunez admitted that in forming his rebuttal opinion he did not review customer files for the homes or the parties at issue, any supporting documents used by Dr. Fishkind, or any financial reports, documents or statements of either of the Defendants. (Doc. 84-2, Ex. D at pp. 33, 70).  Mr. Nunez's formal education consists solely of a Bachelor's Degree in Marketing, with no formal training or experience in providing economic analysis, forecasting, or valuation . (*Id*. at p.22, 27).  Plaintiff points out that Mr. Nunez has extensive experience in the home construction industry, but Mr. Nunez admitted that he has never built any homes in the area where the homes in question are located and has only been to the area to attend builder's shows and continuing education classes.  (*Id*. at p. 23-26).  Mr. Nunez admitted he is not an expert in accounting or economics and has never provided an expert opinion in any case based on economic principles, accounting principles, or valuation principles.  (*Id*. at pp. 20, 27-29).  Without any specialized training, education, expertise, or experience in accounting, economics, or finance, Mr. Nunez is not qualified to state that Dr. Fishkind's analysis is flawed.  *See Frazier*, 387 F.3d at 1260-61.

Furthermore, Mr. Nunez's conclusions are unreliable and based on insufficient facts and data.  Mr. Nunez states in his report that it is not possible to apportion profits derived from the sale of the houses in question based on any objective factual standard and that 100 percent of the profits must be considered attributable to the infringement of Plaintiff's home design.  (Doc. No. 84-2, Ex. A, ¶ 5).  He goes on to state that based on his experience in the industry, and in the absence of an objective standard, at least 75 percent of the profits of a home are derived from the home design itself.  (*Id*.)  First, these opinions contradict each other.  Secondly, Mr. Nunez further contradicted his 100 percent estimate when he stated that a builder's good reputation and large market share are factors which could "sell homes." (*Id*. at p. 36).

In addition, the Plaintiff has not met its burden of proving by a preponderance of the evidence that there is any foundation for either of Mr. Nunez's assertions regarding how much profit is attributable to a home's design plans.  Mr. Nunez acknowledged in his deposition that there are no studies that support his assertion that at least 75 percent of the profits from a home sale are attributable to the design of the home.  (Doc. No. 84-2, Ex. D, p. 43).  He stated that his opinion might be able to be tested through "focus groups" and "exit polls," but admitted that he had not engaged in such research.  (*Id*.)  Mr. Nunez could offer no reason why he chose a standard of 75 percent of the profits being attributable to the home design as opposed to 60 percent other than the fact that 75 percent was his personal opinion. (*Id*. at p. 18).  In essence, Mr. Nunez's opinion is an unsupported assertion about what he believes home buyers value when purchasing a home.

-12-

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702, advisory committee's note (2000 amends.) (emphasis added); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc*. (on remand), 43 F.3d 1311, 1316 (9th Cir.1995) (observing that the gatekeeping role requires a district court to make a reliability inquiry, and that "the expert's bald assurance of validity is not enough"). The admissibility of proffered expert testimony cannot be established merely by the *ipse dixit* of an admittedly qualified expert. *Frazier*, 387 F.3d at 1261. Thus, the Court finds that the proffered expert testimony is unreliable and not based on sufficient facts or data to be admissible at trial.

### C. Monetary Sanctions

Defendants maintain that seeking to admit the report of Mr. Nunez was part of a pattern of unreasonable and vexatious effort by the Plaintiff to use improper expert testimony and ask the Court to award them monetary sanctions under 28 U.S.C. § 1927. Section 1927 governs liability for excessive costs and provides that litigants who unreasonably and vexatiously multiply the proceedings in any case may be required to satisfy the excess costs, expenses and attorney's fees reasonably incurred because of such conduct. *See* 28 U.S.C. § 1927; *Jerelds v. City of Orlando*, 194 F.Supp.2d 1305, 1311 (M.D. Fla.2002). Section 1927 is penal in nature and must be strictly construed. *Id*. The statute delineates three requirements to justify an imposition of sanctions: 1) unreasonable and vexatious conduct; 2) this unreasonable and vexatious conduct must multipl[y] the proceedings; and 3) the

-13-

amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir.2001).

The word "vexatious" is not defined in the statute.  In such circumstances, courts typically read statutory terms to convey their ordinary meaning.  *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 603 (2001).  Black's Law Dictionary defines the term "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying."  Black's Law Dictionary 1559 (7th ed.1999).  While the purpose of Section 1927 is to deter frivolous litigation and abusive practices by litigants, the Court's "power to impose sanctions under Section 1927 should be exercised 'only in instances of a serious and studied disregard for the orderly processes of justice.' " *Jerelds*, 194 F.Supp.2d at 1312 (quoting *Cruz v. Savage*, 896 F.2d 626, 631-32 (1st Cir.1990)).

Defendants argue that sanctions are warranted because a similar report by Mr. Nunez was excluded in a similar case earlier this year.  (*See* Doc. No. 84-2, Ex. E, p. 108, lines 8-24) (transcript of hearing in *Home Design Services v. Park Square Enterprises, Inc.*, Case No. 6:02-cv-637-Orl-JGG, Pretrial Conference, May 17, 2005).  Defendants also note that they have excluded a different expert of Plaintiff in three other cases.  (Doc. No. 84-1, p. 14) ("That expert, Mr. Bodah, was actually excluded in three of these cases...").

The Court finds that the extreme remedy of monetary sanctions is not warranted in the instant case.  First, the Court finds it irrelevant that different reports by a different expert retained by the Plaintiff were excluded in three other cases.  "Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case." *McMahan*, 256

F.3d at 1129.  Furthermore, the Court notes that in the *Park Square* litigation, Mr. Nunez's report was excluded on May 17, 2005, over a week *after* his report in the instant case was disclosed to Defendants.  (*See* Doc. No. 84-2, Ex. E; Doc. No. 97, p.2).  Such a fact militates against a finding that Plaintiff has acted vexatiously or in bad faith in the instant case.  This is not a case where "examples of ... counsel's bad faith and willful abuse of the judicial process abound." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993).  Although Plaintiff may have exhibited poor judgment in its zeal to prosecute these claims, its conduct does not amount to the level of bad faith contemplated by Section 1927.  *See Jerelds*, 194 F.Supp.2d at 1313.  Thus, monetary sanctions are not warranted in this case.

## Conclusion

Based on the foregoing, the Motion to Strike Plaintiff's Expert Witness William Nunez filed by Defendants Hibiscus Homes of Florida, Inc., and Pierre Marsan (Doc. No. 84) is **GRANTED**.  Defendants' request for monetary sanctions is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this __6th____ day of October, 2005.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

-15-

Copies furnished to:

Counsel of Record