**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HOME DESIGN SERVICES, INC.,**

        **Plaintiff,**

**vs.**                              **Case No. 6:03-cv-1860-Orl-19KRS**

**HIBISCUS HOMES OF FLORIDA,**
**INC., and PIERRE MARSAN,**

        **Defendants.**

_____

**ORDER**

This case comes before the Court on the following:

1.      Motion for Partial Summary Judgment, filed by Plaintiff Home Design Services, Inc. on August 31, 2005;  (Doc. No. 87, filed on August 31, 2005);

2.      Motion for Partial Summary Judgment, filed by Defendants Hibiscus Homes of Florida, Inc. and Pierre Marsan on August 31, 2005;  (Doc. No. 88, filed on August 31, 2005);

3.      Memorandum of Law in Support of Motion for Summary Judgment, filed by Defendants on August 31, 2005;  (Doc. No. 89, filed on August 31, 2005);

4.      Plaintiff's Notice of Filing Supplement to Exhibit 7 of its Motion for Partial Summary Judgment, filed by Plaintiff on September 1, 2005; (Doc. No. 90, filed on September 1, 2005);

5.      Response to Defendants' Motion for Summary Judgment, filed by Plaintiff on September 30, 2005;  (Doc. No. 95, filed on September 30, 2005);

6.     Plaintiff's Notice of Correcting Mis-Cited Case in Its Response to Defendants' Motion for Summary Judgment, filed by Plaintiff on October 3, 2005;  (Doc. No. 98, filed on October 3, 2005);

7.     Statement of Disputed Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment, filed by Defendants on October 3, 2005;  (Doc. No. 99, filed on October 3, 2005); and

8.     Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, filed by Defendants on October 3, 2005.  (Doc. No. 100, filed on October 3, 2005).

## Introduction

In 2003, Plaintiff Home Design Services, Inc. ("Home Design") filed the instant action against Defendants Hibiscus Homes of Florida, Inc. and Pierre Marsan (collectively referred to as "Hibiscus"), alleging four counts of copyright infringement under the Federal Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.  (Doc. No. 48, "Second Amended Complaint," filed on September 13, 2004).  Specifically, Home Design alleged in its Complaint that Hibiscus infringed on materials created and copyrighted by Home Design when Hibiscus participated in the construction of multiple residences which had floor plans copied from Home Design's prior architectural designs.  (*Id.*)  Hibiscus denied these allegations in its Answer and asserted fourteen (14) affirmative defenses on its behalf.  (Doc. No. 53, filed on October 4, 2005, pp. 4-7).  Both parties have now asked the Court for summary judgment.  Hibiscus seeks summary judgment on all of Home Design's claims. Home Design seeks partial summary judgment on certain elements of its claims, an element

of damages, and all but one of Hibiscus' affirmative defenses.  For the reasons stated below, both Motions for Summary Judgment must be granted in part and denied in part.

### Facts and Procedural History

Home Design is an architectural design firm which sells architectural plans for residential homes.  Hibiscus Homes of Florida, owned by Pierre Marsan, is a construction business which develops and constructs residential homes in the Central Florida area.  In the instant case, Home Design claims that it is the owner of two copyrighted residential floor plans, the HDS-1704 and the HDS-1958, both of which were unlawfully copied by Hibiscus when constructing homes in the Central Florida area.[1]  (Doc. No. 87-1, p.1).  Home Design alleges that Hibiscus' "Carrington" model infringes the HDS-1704, and Hibiscus' "Downing" model infringes the HDS-1958.  (*Id.*)  Home Design maintains that it was not aware of these alleged infringements until April 2003.  (*Id*. at p.3).  On the issue of damages, Home Design seeks compensation for the alleged infringement and Hibiscus' profits derived from constructing homes purportedly based on Home Design's plans.

In response, Hibiscus argues that both the HDS-1704 and the HDS-1958 are designs which are not copyrightable.  (Doc. No. 88, p.1).  Further, Hibiscus alleges that Home Design seeks damages not permitted under the Copyright Act.  (*Id.*)  Hibiscus also maintains that Home Design is not entitled to claim attorneys' fees or statutory damages under 17

---

[1] Home Design also claimed initially in Counts I and III of the Complaint two other infringements but concedes in the Motion for Summary Judgment that no infringements can be identified with respect to the two designs alleged to have been infringed in these counts. (Doc. No. 87-1, p. 2, FN1).  Thus, Hibiscus is entitled to Summary Judgment on Counts I and III of the Complaint, and discussion of the other two floor plans have been omitted from the Facts section of the Court's Order.

U.S.C. § 504(b) as a matter of law. (*Id*.)  Finally, Hibiscus argues that issues of fact remain with regard to ownership of the copyright, copying of the allegedly protected works, and whether Home Design has complied with the applicable statute of limitations.  (Doc. No. 100 at pp.2-5, 8-10, 18-20).

## Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party."  *Id.*  The moving party bears the burden of proving that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden, a court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.  The court may not weigh conflicting evidence or weigh the credibility of the parties.  *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted).  If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment.  *Id.* (citation omitted).

Once a movant who does not bear the burden of proof on the pertinent claim or defense satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the party bearing the burden of proof on the pertinent claim or defense to come forward with specific facts showing that there is a genuine issue for trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must demonstrate that there is a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (citing *Anderson*, 477 U.S. 242). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). All justifiably inferences are to be drawn in favor of the non-movant, and the evidence presented by the non-movant is to be believed by the court. *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact remaining for trial. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

## Analysis

## I.  Home Design's Motion for Partial Summary Judgment

### A.  Claims Asserted by Home Design

Home Design seeks partial summary judgment on the issues of (1) ownership of the copyrights of HDS-1704 and HDS-1958; (2) copying of the purportedly copyrighted materials; and (3) the amount of gross revenue earned by Hibiscus in constructing the homes which used the allegedly infringing "Carrington" and "Downing" floor plans.  The Court will address each of these issues individually.  For the reasons stated below, Home Design is not entitled to summary judgment on any of these issues.

### 1.  Ownership

Home Design argues that its ownership in the plans at issue is undisputed and therefore that no material facts are in dispute with regard to ownership.  (Doc. No. 87-1 at p.6).  However, after examining the pleadings, depositions, and evidence, it is clear that there are issues of fact on these contentions.

Only the legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of 28 U.S.C. § 411, to institute an action for any infringement of that particular right committed while he or she is the owner of the copyright. 17 U.S.C. §§ 411(a), 501(b); *Montgomery v. Noga,* 168 F.3d 1282, 1292-93 (11th Cir. 1999).  The plaintiff in a copyright infringement action normally bears the burden of proving ownership of a valid copyright.  In order to meet this burden, the plaintiff must show that the work is original and that the applicable statutory formalities were followed. *See Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1541 (11th Cir.1996).

In the instant case, Home Design has failed to carry its burden of proving that it was the legal or beneficial owner of the plans at issue at the time of the alleged infringement or any time thereafter.  Home Design offers as evidence of ownership the certificates of registration of the HDS-1704 and the HDS-1958.  (*See* Doc. No. 48, Exs. E & K).  However, as it is undisputed that neither of these certificates was filed within five (5) years after the first publication of the work at issue, such certificates cannot constitute *prima facie* evidence of the validity of the copyright.[2]  *See* 17 U.S.C. § 410(c).  Although the certificates of registration may still be submitted as evidence of ownership, *see id.*, Home Design has not met its burden of proving that no genuine issue of material fact exists regarding whether it is the owner of the plans now or at the time of the purported infringement.  The evidence of ownership of these certificates, therefore, is insufficient to meet Home Design's burden on summary judgment.

It is undisputed that in 1998 one Joseph Kantor, in his capacity as President of a company named Olympia Homes, executed a purchase agreement in which he purported to transfer the right to use the plans at issue to Marsan.  (Doc. No. 87-1, pp. 6-7; Doc. No. 100, p.4).  Home Design claims that this transfer of rights is unenforceable because Olympia merely had a license to use the plans from Home Design and Home Design never consented to a transfer of the license.  (Doc. No. 87-1, p.7).  Russell Kingman, the Vice President of Home Design, stated in a sworn affidavit that Home Design is the owner of both plans.

---

[2] *See* 17 U.S.C. § 410(c), which states:  "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

(Doc. 87-4, ¶ 2).  However, both Kantor and one of his former employees, Gregg Lockwood, gave sworn testimony which suggests that Kantor may have purchased ownership rights to the plans, and not just a license to use them.  Kantor testified that the agreement between Home Design and Olympia stated that the plans were Olympia Homes' property, and that Home Design could never sell or give the plans to anyone else.  (Doc. No. 99-2, pp. 8-9). Lockwood testified that during the time in question, he worked on the plans with the understanding that Olympia was the valid owner of the copyrights as well.  (Doc. No. 89-19, pp. 10-11).  Neither Home Design nor Hibiscus have produced the agreement between Kantor and Home Design so that the Court might determine the agreement's scope.  If the agreement did transfer full ownership of both plans, or for some other reason confirmed Lockwood's understanding that the plans did not belong to Home Design, then Home Design would not be the legal or beneficial owner of the plans at the time of the infringement or anytime thereafter, and hence would lack standing to sue.  *See* 17 U.S.C. § 501(b).

In light of this conflicting testimony, is clear that an issue of fact remains regarding the ownership of both the HDS-1704 and the HDS-1958.  In ruling on a Motion for Summary Judgment, the Court cannot weigh conflicting evidence or weigh the credibility of the parties or their sworn testimony.  *See Hairston*, 9 F.3d at 919.  Thus, Home Design is not entitled to summary judgment on the issue of ownership of the plans.

## 2.  Copying

Home Design argues that it is entitled to summary judgment on the issue of whether Hibiscus copied its designs.  The Eleventh Circuit has consistently held that original floor plans and construction drawings for single family houses can be protected under the

copyright laws.  *E.g., Imperial Residential Design, Inc. v. Palms Dev. Group, Inc*., 70 F.3d 96 (11th Cir.1995).  To prevail on a copyright infringement claim, a plaintiff must show that the defendant copied original, constituent elements of the copyrighted works.  *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Only the copying of original things which "owe their origin" to the plaintiff are actionable; the originality requirement rules out protecting things as to which by no stretch of the imagination the plaintiff could be called the author.  *Id*.  (citations omitted).  Hence, copyright protection does not encompass general concepts or "standard features."  *John Alden Homes, Inc. v. Kangas,* 142 F.Supp.2d 1338, 1343 (M.D. Fla. 2001); *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1992).

Home Design has not met its burden of demonstrating as a matter of law that there is no genuine issue of material fact as to whether Hibiscus copied the original elements of the plans at issue.  Home Design's Motion for Partial Summary Judgment offers nothing but the conclusory statement that the issue of copying is undisputed in this case.  (Doc. 87-1, p.8).  Home Design cites no authority or evidence in support of this statement.  Nor does it discuss which elements of the plans it claims are original.  James Zirkel, President of Home Design, stated in a sworn deposition that the plans, viewed as a whole, are original designs. (Doc. No. 87-2; 89-4, p.67).  Russell Kingman makes a hearsay statement in his affidavit that after investigation, he determined that Hibiscus copied these plans without authorization. (Doc. No. 87-4, ¶ 2).  Such generalized statements, however, considered in a light most favorable to Hibiscus, are insufficient for the Court to grant summary judgment  in favor of Home Design on this issue.

In its Response, Hibiscus notes that Gregg Lockwood gave testimony in his deposition which indicated that in his opinion Home Design's plans were not unique. (Doc. No. 89-19, pp. 32-34) (stating, *inter alia*, "...there's nothing unique here as far as 'quote/unquote' architectural or residential design" when asked about the plans at issue). Furthermore, even James Zirkel stated that the split floor plan design used in the plans at issue were industry standard at the time and that he "very well" could have seen a plan with the same rooms in the same location prior to creating the HDS-1704. (Doc. No. 89-4, p. 55). Such contradictory testimony reveals an issue of fact both as to the originality of the plans and whether the alleged copying was of features which "owe their origin" to the plaintiff. *Feist,* 499 U.S. at 361. To weigh the conclusory statements offered by both parties regarding the originality of the plans at this point would require a weighing of evidence which is inappropriate in considering a motion for summary judgment. *See Hairston*, 9 F.3d at 919. Furthermore, due to the nature of copyright claims, which often involve very difficult and close questions of fact, summary judgment on this issue has traditionally been disfavored. *See e.g.*, *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980). For the foregoing reasons, the Court finds issues of fact remain regarding which elements of the plans at issue were original and whether these elements were copied by Hibiscus when constructing the "Carrington" and "Downing" models.

### 3.  Gross Revenues

Home Design seeks summary judgment on the amount of Hibiscus' alleged gross revenues from selling homes constructed on the allegedly infringed floor plans. Under 17 U.S.C. § 504(b), a successful plaintiff is entitled to both actual damages and "any profits of

the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). In an action for profits attributable to the infringement, the copyright owner is required to present proof of the infringer's gross revenue. *Id.* It is the infringer's burden to prove deductible expenses and the portion of profits attributable to factors other than the copyrighted plans. *Id.* Thus, the plaintiff has the burden of proof regarding (1) its actual damages and (2) the defendant's gross revenue. *Data General Corp. v. Grumman Sys. Support Corp.* 36 F.3d 1147, 1173-74 (1st Cir. 1994).

After considering all inferences drawn from the underlying facts in the light most favorable to Hibiscus, the Court finds that Home Design has not met its burden of proving that no genuine issue of material fact exists with regard to Hibiscus' gross revenue from the sales of the allegedly infringing homes. As evidence of its claim that it is entitled to summary judgment, Home Design offers a report that allegedly contains the information regarding the gross revenue from each infringing home. (*See* Doc. No. 87-6, Ex. C). However, as the Court has discussed and as Hibiscus points out in its Response, questions of fact remain as to whether Hibiscus had a license to use or ownership of the plans at issue when the allegedly infringing homes were constructed and sold.

Furthermore, an issue of fact exists regarding whether the sales prices listed in Home Design's report are the actual sales prices of the homes at issue. An examination of the evidence offered in support of Home Design's Motion for Partial Summary Judgment demonstrates that some of the alleged sales prices listed in Home Design's report differ

from the sales prices disclosed by Hibiscus in its Response to Plaintiff's Interrogatories.[3] (Compare Doc. No. 87-6, Ex. C; Doc. No. 87-5, Ex. B).  Determining which of the selling prices is correct would require a weighing of evidence which is inappropriate in considering a motion for summary judgment.  *See Hairston*, 9 F.3d at 919.  Hence, summary judgment is inappropriate on the issue of Hibiscus' gross revenues.

### B.  Affirmative Defenses Asserted by Hibiscus

Hibiscus has asserted fourteen (14) affirmative defenses in the instant case.  Home Design contends that there are no genuine issues of material fact with regard to any of these defenses and that it is entitled to summary judgment on all but one.  The Court will address each of Hibiscus' asserted affirmative defenses in turn.

### 1.  Hibiscus' Thirteenth Affirmative Defense:  Statutory Damages/Attorneys' Fees

Hibiscus contends as its thirteenth affirmative defense that Home Design is not entitled to statutory damages and/or attorneys' fees in the instant action as a matter of law. Home Design concedes in its Motion for Partial Summary Judgment that it is not entitled to either.  (Doc. No. 87-1, p. 27).  Thus, Hibiscus is entitled to summary judgment on the issue of statutory damages and attorneys' fees.

---

[3] For instance, Hibiscus disclosed to Home Design that the selling price of a "Downing" model at 1120 Prosperity Avenue in the applicable housing development sold for $159,350.00.  (Doc. No. 87-5, p. 26).  Home Design states in its report that the same home sold for $159,400.00.  (Doc. No. 87-6, p.16).  Likewise, Hibiscus disclosed to Home Design that the selling price of a "Carrington" model at 2614 Gold Dust Circle in the applicable housing development sold for $137,150.00.  (Doc. No. 87-5, p. 24).  Home Design states in its report that the same home sold for $158,500.00.  (Doc. No. 87-6, p. 15). These are two of many discrepancies between the two items of evidence.

## 2.  Hibiscus' Third, Seventh, Eighth, Ninth, and Twelfth Affirmative Defenses

Hibiscus asserts as affirmative defenses the contentions that a) Home Design does not suffer from a compensable injury (third defense); b) Home Design's claims are based upon plans whose elements do not constitute copyrightable material (seventh defense); c) the copyright registrations for the HDS-1704 and the HDS-1958 are fraudulent and/or invalid (eighth defense); d) any protectable expression in the designs in question fails to bear a substantial similarity to Hibiscus' plans (ninth defense); and e) Home Design lacks standing to bring the instant action (twelfth defense).  Home Design argues that these claims do not amount to affirmative defenses to the instant action and thus should be stricken.

The Court finds that Home Design is entitled to summary judgment on these five issues.  To prevail on a copyright infringement claim, a plaintiff must show that (1) the defendant copied; (2) original, constituent elements; (3) of plaintiff's copyrighted works. *Feist*, 499 U.S. at 361.  Hibiscus' asserted seventh, eighth, and ninth affirmative defenses do nothing more than assert that plaintiff has failed to demonstrate the requisite elements of its claims.  "A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

Likewise, Hibiscus admits that its  third and twelfth affirmative defenses are premised solely on the allegation that Joseph Kantor is the legal and beneficial owner of the plans at issue, and thus that Home Design does not own the plans.  (Doc. No. 100, pp. 20-21).  Defenses which seek to negate an element of the plaintiff's prima facie case are excluded from the definition of an affirmative defense in Federal Rule of Civil Procedure 8(c). *Rawson*, 846 F.2d at 1349 (citations omitted).  Thus, to the extent that they have been

asserted as affirmative defenses in the instant case, the defenses of lack of compensable injury and lack of standing must also be stricken.

For the foregoing reasons, Home Design is entitled to summary judgment on Hibiscus' third, seventh, eighth, ninth, and twelfth affirmative defenses.

### 3. Hibiscus' Second and Fourteenth Affirmative Defenses

Hibiscus also asserts as affirmative defenses that a) the Complaint fails to state a claim upon which relief may be granted; and b) that the relief requested exceeds what is permissible by law. Home Design argues that it is entitled to summary judgment on each of these purported affirmative defenses.

Home Design has failed to properly state why it is entitled to summary judgment on these defenses. To the extent that these defenses seek to assert that Home Design has failed to state a claim for copyright infringement, the Court agrees with Home Design that in this respect, Hibiscus' argument is without merit. To state a claim for copyright infringement, the plaintiff must allege (1) the specific original work that is the subject of the copyright claim; (2) that the plaintiff owns the copyright in the work; (3) that the work in question has been registered in compliance with the statute; and (4) by what acts and during what time the defendant has infringed the copyright. *Klinger v. Weekly World News*, 747 F. Supp. 1477, 1481 (S.D. Fla. 1990). Home Design's Second Amended Complaint clearly states that it is the owner of the plans at issue, that it has registered the subject plans, and that Hibiscus infringed the copyrights at issue when constructing the "Carrington" and "Downing" model homes. (*See generally* Doc. No. 48, Counts II and IV). Thus, the Court finds Home Design

has stated a valid claim for copyright infringement with respect to the HDS-1704 and the HDS-1958.

However, to the extent that Hibiscus pleads these affirmative defenses in order to assert that Home Design is not entitled to statutory damages and/or attorneys' fees, Home Design has already conceded that it is not so entitled and thus cannot be entitled to summary judgment.  In addition, to the extent that Hibiscus' affirmative defenses two and fourteen contend that Home Design has not stated a valid claim for unfair competition and deceptive trade practices, Home Design's contention that these defenses have been improperly raised is without merit.

In its Order dated September 1, 2004, the Court ruled that Home Design's First Amended Complaint, which sought damages for unfair competition and unfair trade practices, failed to state a cause of action for those torts.  (Doc. No. 45).  The Court ruled that if Home Design intended to state a cause of action for unfair competition or unfair trade practices, it must do so in an amended complaint, pleading those causes of action separately from its copyright infringement claims.  (*Id*.)  Home Design did file a Second Amended Complaint.  (Doc. No. 48).  However, the Second Amended Complaint contained the same language seeking damages for unfair competition and unfair trade practices under the counts of the Complaint which alleged copyright infringement.  (Doc. No. 48, pp. 6, 10-11).  Thus, Home Design failed to comply with the Court's Order stating that it must separately plead a cause of action for unfair competition and unfair trade practices if it sought damages for those alleged injuries.  For these reasons, Home Design is not entitled to summary judgment

on affirmative defenses two and fourteen to the extent that they state that Home Design has not stated a cause of action for unfair competition or unfair trade practices.

### 4.  Hibiscus' First Affirmative Defense:  Statute of Limitations

Home Design argues that there is no genuine issue of material fact as to whether the present action was filed within the applicable statute of limitations.  The statute of limitations for copyright infringement claims states that causes of action must be asserted within three (3) years after the claim has accrued.  17 U.S.C. § 507(b).  A copyright infringement claim accrues when a plaintiff "learns, or should as a reasonable person have learned that the defendant was violating his rights."  *James W. Ross, Inc. v. Cecil Allen Constr., Inc*., No. 6:03-cv-792-ORL28KRS, 2004 WL 1146104, at *2 (M.D. Fla. Apr.26, 2004) (quoting *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir.), *reh'ng and reh'ng en banc denied* (7th Cir. 2004)); *see also Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1236 (11th Cir. 2002) (Birch, J., specially concurring).

Home Design has not met its burden of proving that no genuine issue of material fact exists with regard to whether the instant action was filed within the three-year statute of limitations.  Although Home Design contends that this issue is undisputed, an examination of the record indicates that this is not the case.  Mr. Zirkel testified in his deposition that he had not learned of the alleged infringements until April of 2003, nine (9) months before the initial Complaint was filed in this case.  (Doc. No. 87-2, p. 5).  However, while Home Design has produced evidence indicating that it was first aware of the infringements in April of 2003, Home Design has offered no evidence to demonstrate that April 2003 was the first instance when it should have known of the alleged infringements.

It is undisputed that Home Design and Hibiscus reached an agreement regarding the permissible use of some of Home Design's plans in the applicable subdivision in November of 1999. (*See* Doc. No. 87-3) (series of limited copyright release authorization agreements allowing Hibiscus to use Home Design's plans). Thus, Home Design knew that Hibiscus was constructing homes in the applicable subdivision as early as 1999. (*See id.*). Hibiscus contends that a reasonable person would have investigated at this time to ensure that Hibiscus was complying with the scope of the use agreement. (*See* Doc. No. 100, pp. 18-19). If Home Design should have known that the alleged infringements were taking place prior to December 29, 2000, than this action was not timely filed. *See* 17 U.S.C. § 507(b). While it is true that Home Design is not required to take extraordinary measures to determine whether Hibiscus was infringing upon its designs, this determination alone does not resolve the question of whether Home Design should have known that its plans were being used. *Home Design Serv., Inc. v. Park Square Enterprises, Inc.*, No. 6:02-CV-637-ORL28JGG, 2005 WL 1027370, at *8 (M.D. Fla. 2005). Thus, a question of fact remains as to whether Home Design should have known of the purported infringements prior to December 29, 2000. Summary judgment is inappropriate on this issue.

### 5. Hibiscus' Fourth Affirmative Defense:  Laches and Estoppel

Home Design is entitled to summary judgment on the asserted affirmative defenses of laches and estoppel. Laches is an equitable doctrine by which a court may deny relief to a claimant who has unreasonably delayed in asserting a claim, but only when that delay has prejudiced the party against whom relief is sought. *See* BLACK'S LAW DICTIONARY 891 (8th ed.2004). To establish laches, a defendant must demonstrate (1) a delay in asserting a right

or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.  *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986).

Although whether a reasonable person would have discovered the purported infringements earlier remains a question of fact, Home Design has produced uncontroverted evidence that it was not actually aware of Hibiscus' conduct until April of 2003.  (Doc. No. 87-2, p. 5).  Thus, at worst, Home Design unintentionally neglected to assert its rights earlier.  "Mere neglect to challenge action is not sufficient to establish laches in any case." *Env'tl. Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 479 (5th Cir. 1980); *CSX Transp., Inc. v. City of Thorsby*, 741 F.Supp. 889, 892 (M.D. Ala. 1990).

Furthermore, the Court is unpersuaded by Hibiscus' unsupported assertion that it has been "severely prejudiced" by Home Design's alleged delay.  (Doc. No. 100, p.22). Hibiscus argues that it has suffered prejudice through the purported delay in that had the claim been timely asserted, Hibiscus  would have had access to more of Joseph Kantor's paperwork and had an  opportunity to litigate the claim before the homes at issue were built. (*Id.*)  These arguments are not well taken.  Joseph Kantor's company, Olympia Homes, went bankrupt in 1997, over two years before the earliest possible time a reasonable person would have noticed any copyright infringement.  (Doc. No. 99-2, p.14).  It also remains to be proven whether in the instant case a reasonable person could have known a company was violating his or her rights by constructing a home based on his or her copyrighted plans before the company actually began constructing the home.  Thus, Hibiscus' unsworn contention that the issues in this case could have been decided prior to the construction of

-18-

the homes at issue is not supported by evidence, and Hibiscus has failed to carry its burden of proof.

In addition, there is no factual basis for Hibiscus' equitable estoppel defense. The doctrine of equitable estoppel applies in copyright cases to prevent claimants from recovering when they have acted "in a way that induc[ed] the infringer reasonably to rely upon such action to his detriment." *Dream Dealers Music v. Parker*, 924 F.Supp. 1146, 1152 (S.D.Ala.1996) (quoting *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir.1991)). Generally the doctrine is applied in copyright cases when the copyright owner is aware of the infringing conduct, yet the owner acts in such as way as to induce the infringer to reasonably rely upon such actions, causing the infringer to suffer a legal detriment. *See e.g. Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. 1993); *Dream Dealers*, 924 F.Supp. at 1152. As Home Design points out, there is simply no basis in the record for any claim that Defendants were induced into their allegedly infringing activities due to any action taken by Home Design. Where the record fails to support the conclusion that the copyright owner did something to mislead the alleged infringer, the doctrine of equitable estoppel is not applicable. *Dream Dealers*, 924 F.Supp. at 1152.

For the foregoing reasons, Home Design is entitled to summary judgment on the affirmative defenses of laches and estoppel.

### 6. Hibiscus' Fifth Affirmative Defense: Unclean Hands and Inequitable Conduct

"The defense of unclean hands will bar enforcement of a valid copyright when a plaintiff commits wrongdoing 'of serious proportions.' " *Saxon v. Blann*, 968 F.2d 676, 680

(8th Cir.1992) (quoting 3 Nimmer on Copyright, § 13.09[B] (1991)).  To successfully assert the unclean hands defense, a defendant must show: (1) "that the plaintiff's wrongdoing is directly related to the claim against which it is asserted;" and (2) "that it was personally injured by [the plaintiff's] conduct."  *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir.1993).  Hibiscus argues that Home Design has dirtied its hands by failing to identify third-party authors of the HDS-1704 and HDS-1958, by asserting rights to plans which have been sold to a third party, and by seeking to assert rights in common, unprotectable elements contained in the plans at issue.  (Doc. No. 100, p. 23-24).  After examining the pleadings and evidence at issue in the case at bar, Hibiscus has shown that summary judgment is inappropriate regarding the defense of unclean hands and inequitable conduct.

As stated above, issues of fact remain with regard to whether Home Design was the legal or beneficial owner of the plans at issue at the time of the infringement or any time thereafter.  If Home Design knowingly failed to disclose to the Copyright Office when it applied for the copyright to the HDS-1704 and HDS-1958 that it had sold the rights to these plans to a third party, such omission may support an unclean hands defense. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982) (holding that a knowing failure to advise of facts which might have resulted in rejection of the application constitutes reason for holding copyright invalid); *see also Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609 (D. R.I. 1976).  Home Design has presented the Court with no evidence to support its unsworn, conclusory assertion that the instant action was filed in good faith.  Nor does this statement shed any light on Home Design's state of mind

-20-

when it applied for the applicable copyrights in 2003.  For these reasons, summary judgment is inappropriate on the issue of unclean hands and inequitable conduct.

### 7.  Hibiscus' Sixth Affirmative Defense: Fair Use/Public Domain

Nor is Home Design entitled to summary judgment on the asserted affirmative defense of fair use.  The copyright doctrine of fair use permits the limited use of copyrighted materials in a reasonable manner without the consent of the legal or beneficial owner of the copyright.  *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 549 (1985).  Fair use analysis must be tailored to the factors present in each individual case.  *Id.* at 552.  The factors to consider in determining whether the use of a copyrighted work is a "fair use" include but are not limited to the following:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  A defendant may fairly use those elements of a copyright owner's work that copyright law does not protect, namely, an idea, expression necessarily incident to the idea, and expression already in the public domain.  *Atari Games Corp. v. Nintendo of America, Inc.*, 975 F.2d 832, 839 (Fed. Cir. 1992).

Clearly it would be inappropriate to grant summary judgment on the defense of fair use where factual issues remain regarding how much, if any, of the subject matter within the plans at issue is copyrightable, and how much, if any, of the subject matter within the plans at issue was actually copied by Hibiscus when constructing its "Carrington" and

""Downing" model homes.  (*See supra* Section I-A(2) of the Court's opinion).  While Hibiscus' commercial purpose in allegedly infringing the designs at issue weighs heavily against a finding of fair use, *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 448-49, 455 n.40 (1984), issues of fact remain with regard to the remaining three factors.  This is especially the case with the third factor which requires a weighing of the amount and substantiality of the portion of the plans used in relation to the design as a whole.  *See* 17 U.S.C. § 107(3).  For the foregoing reasons, the Court will not grant summary judgment on the issue of fair use.

### 8. Hibiscus' Tenth Affirmative Defense:  Copyright Misuse

Summary judgment would also be inappropriate on the affirmative defense of copyright misuse.  Copyright misuse, a doctrine derived from the equitable defenses of patent misuse and unclean hands, forbids a copyright holder from using a copyright "to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant."  *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999) (quoting *Lasercomb, Am. Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990) (quoting *Morton Salt Co. v. G.S. Suppiger*, 314 U.S. 488, 492 (1942))).  When properly asserted and proven, a copyright misuse defense would bar recovery for a copyright owner who attempts to extend its limited copyright rights to property not covered by the copyright.  *See Lasercomb*, 911 F.2d at 972.  The purpose of the defense is to prevent a litigant from securing an exclusive right which exceeds what has already been granted via the copyright.  *Telecomm Tech. Serv., Inc. v. Siemens Rolm Comm., Inc.* 66 F.Supp.2d 1306, 1324 (N.D. Ga. 1998) (citing *Lasercomb*, 911 F.2d at 977-79).

Home Design's first argument, that copyright misuse fails as a matter of law in the

Eleventh Circuit, is not well taken.  Although the doctrine of copyright misuse has not been

formally recognized or rejected by the United States Court of Appeals for the Eleventh

Circuit,[4] such appellate court has acknowledged that the doctrine might some day be

available in copyright cases.  *See Bell South Advertising and Publ'g Corp. v. Donnelly Info.*

*Publ'g, Inc.*, 933 F.2d 952 (11th Cir. 1991), *vacated on other grounds*, 977 F.2d 1435 (11th

Cir. 1992).  Furthermore, nearly all  circuit courts which have issued a definitive opinion on

the viability of the copyright misuse defense in the past fifteen years have recognized the

defense.[5]  The  trend toward recognition has led a number of commentators to speculate that

the growing acceptance of the doctrine will likely lead to its adoption in some form by all

of the circuits and the United States Supreme Court.[6]  The Court notes that a case from the

Middle District of Florida recently held on similar facts that it would be inappropriate to

grant summary judgment on the assertion of a copyright misuse defense in the context of the

---

[4]  *Telecom Tech. Serv. Inc. v. Rolm Co.*, 388 F.3d 820, 831 (11th Cir. 2004).

[5]  *See e.g. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191 (3d Cir.2003); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir.1999); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516 (9th Cir. 1997), *cert. denied*, 522 U.S. 933 (1997), *amended*, 133 F.3d 1140 (9th Cir.1998); *Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 913 (7th Cir.1996); *Lasercomb*, 911 F.2d at 970 (4th Cir. 1990).

[6]  *See e.g.* Neal Hartzog, *Gaining Momentum: A Review of Recent Developments Surrounding the Expansion of the Copyright Misuse Doctrine and Analysis of the Doctrine in its Current Form*, 10 MICH. TELECOMM. TECH. L. REV. 373, 391 (2004); 4 Nimmer on Copyright § 13.09[A][2][a][2][b] (also noting the Supreme Court's "tacit approval of an analogy between patents and copyrights" in *United States v. Loew's, Inc.*, 371 U.S. 38 (1962)); Mark Lemley, *Beyond Preemption: The Law and Policy of Intellectual Property Licensing*, 87 CALIF. L.REV. 111, 152 n. 184 ("[T]he cases expressing skepticism about the copyright misuse defense 'should be taken with a grain of salt' because they are generally older cases, and the recent trend seems to be to recognize the defense.") (quoting 2 Paul Goldstein, Copyright § 9:35-40 (1998)).

alleged infringement of architectural plans.  *See Home Design Serv., Inc. v. Park Square Enterprises, Inc.*, No. 6:02-CV-637-ORL28JGG, 2005 WL 1027370, at *11-*12 (M.D. Fla. 2005) (noting the trend toward acceptance and acknowledging the defense is "well grounded in the basic objectives of copyright").  Thus, it would be inappropriate to grant summary judgment on Hibiscus' copyright misuse defense simply because it has not yet been formally recognized.

The Court will now examine whether the defense has been properly asserted by Hibiscus in the instant case.  Home Design contends that even if the defense of copyright misuse were recognized in the Eleventh Circuit, it can not properly be asserted in the case at bar.  Home Design argues that in the context of both copyright law and patent law, the defense has been limited to situations where the owner sought protection for contractual conditions imposed by the copyright or patent holder which exceed the copyright or patent rights, or where the plaintiff has sought copyright protection for information which it copied from another source and pretended to own.  (Doc. 87-1, pp. 24-25).

For at least two reasons, Home Design's argument fails.  First, the affirmative defense of copyright misuse has not been as "severely limited" by the courts as Home Design contends it has.  The Seventh Circuit has applied the defense where a litigant has used its copyright to "obtain property protection ... that copyright law clearly does not confer" to "force a settlement or ... even achieve an outright victory" over the opposing party.  *Assessment Techs. of Wi, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003); *see also Assessment Techs, of Wi, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004)

-24-

(subsequent proceeding).[7]  In addition, the Third Circuit has held that the defense may still apply even where the plaintiff has not engaged in anti-competitive behavior or implicated the fair use doctrine and the dichotomy between ideas and expressions.  *Video Pipeline*, 342 F.3d at 204-05.  The focus of the defense should not be on whether a contractual agreement overreaches or if the protected work has been copied, but instead should be on whether anyone is using the copyright statute to interfere "with the public's right to be informed regarding matters of general interest."  *Id.* at 205.

Secondly, Hibiscus has demonstrated that a genuine issue of material fact exists as to whether Home Design has taken material in the public domain and attempted to use its copyrights to obtain property protection over such material.  Summary judgment on the issue of copyright misuse would be particularly inappropriate where, as here, issues of fact exist as to whether the material Hibiscus is alleged to have copied is actually unique and whether the affirmative defenses of unclean hands, fair use, and public domain apply.  If the plans at issue are found to be "largely generic in nature," then Hibiscus may be able to assert a copyright misuse defense.  *See e.g. Park Square,* 2005 WL 1027370 at *12.  For the foregoing reasons, Home Design is not entitled to summary judgment on the affirmative defense of copyright misuse.

------------------------------------------------------------------------

[7] Home Design is incorrect in its contention that *Assessment Technologies* is wholly distinguishable from the case at bar.  In both that case and the instant case, the defendant attempted to assert the copyright misuse defense based in part on the allegation that the Plaintiff sought copyright protection over items in the public domain.  *See Assessment Technologies*, 350 F.3d at 641.  While Home Design is correct that in *Assessment Technologies* the issue was whether the defendant sought copyright protection over public data, and in this case the issue is whether Home Design seeks copyright protection over ideas and common elements of floor plans, this difference does not make any reliance on *Assessment Technologies* wholly misplaced.

### 9. Hibiscus' Eleventh Affirmative Defense:  License

A plaintiff alleging copyright infringement need prove only "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pub., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  "[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir.1996).  As stated in Section I-A(1) above, issues of fact remain with regard to whether Hibiscus or a third party in privity with Hibiscus had a license to use the HDS-1704 and the HDS-1958.  Thus, summary judgment is inappropriate on the affirmative defense of whether a license existed to use the plans at issue.

### II.  Hibiscus' Motion for Partial Summary Judgment

Hibiscus seeks summary judgment on the following issues: (1) that the HDS-1704 and the HDS-1958 do not possess subject matter entitled to copyright protection; and (2) that Home Design's damages are limited to its design fees as a matter of law.  (Doc. 89-1, p.1). For the reasons stated below, Hibiscus is not entitled to summary judgment on either of these issues.  However, Hibiscus is entitled to summary judgment on Counts I and III of the Second Amended Complaint.  (Doc. No. 48).

### A.  Subject Matter of the HDS-1704 and HDS-1958

Hibiscus has not met its burden of showing there is no genuine issue of material fact with regard to whether the plans at issue contain statutorily protectable subject matter.  Only the legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of 28 U.S.C. § 411, to institute an action for any infringement of that

particular right committed while he or she is the owner of the copyright. 17 U.S.C. § 501(b); *id*. at § 411(a); *Montgomery,* 168 F.3d at 1292-93.  To prevail on a copyright infringement claim, a plaintiff must show that the defendant copied original, constituent elements of its copyrighted works.  *Feist,* 499 U.S. at 361 (1991).

Hibiscus contends that, setting aside the issue of copying, no genuine issue of material fact exists with regard to whether the plans at issue contain "constituent elements ... that are original."  *Id*.  Hibiscus states that the deposition testimony of James Zirkel, Joseph Kantor, and Gregg Lockwood demonstrate that the plans at issue are not original but merely embody ideas present in previously published home design plans.  It also submits several other "nearly identical" floor plans which purportedly demonstrate that the HDS-1704 and HDS-1958 contain no original, constituent elements.  Hibiscus argues that this evidence, coupled with the fact that the plans at issue are not entitled to a presumption of ownership under the copyright act, make summary judgment on this issue especially warranted.  (Doc. 89-1, p. 10).

After examining the pleadings, depositions, and evidence at issue and drawing all reasonable inferences from the underlying facts in favor of the nonmoving party, it is clear that issues of fact remain as to whether the allegedly copied material contained original, constituent elements capable of protection under copyright law.  Hibiscus is correct in asserting that because the copyrights for the plans at issue were not obtained within five years from the date of creation, they are not entitled to a presumption of validity.  *See* 17 U.S.C. § 410(c).  However, such certificates may still be presented as evidence that the designs were the original creations of Home Design.  *See id*.  Furthermore, Home Design has

produced evidence, in the form of sworn testimony of Zirkel and Kingman, that the HDS-1704 and HDS-1958 are the original creations of Home Design and that Home Design is the owner of these plans.  (Doc. No. 87-2; 89-4, p.67; Doc. No. 95-5, ¶ 2).

Although Kantor and Lockwood gave deposition testimony which suggests that the plans were not original, (Doc. No. 99-2, pp. 8-9; Doc. No. 89-19, pp. 32-34) and Zirkel conceded that he very well might have seen some of the designs incorporated in the plans in other firms' designs, (Doc. No. 89-4 p. 55), this conflicting evidence falls short of demonstrating that no genuine issue of fact exists as to the originality of the plans at issue. In fact, just the opposite is true.

The Court is not permitted to reach a decision regarding the originality of the plans at this point, for doing so would require a weighing of evidence which is inappropriate in considering a motion for summary judgment.  *See Hairston*, 9 F.3d at 919.  Furthermore, as noted earlier, summary judgment on this issue has traditionally been disfavored.  *See e.g.*, *Hoehling,* 618 F.2d at 977.  For these reasons, Hibiscus is not entitled to summary judgment on the issue of whether the plans at issue contain statutorily protectable subject matter.

## B.  Damages

Home Design seeks damages in the instant case amounting to its actual damages and any of the profits earned by Hibiscus from its gross revenues in selling homes based on the allegedly infringing floor plans.  (Doc. No. 95-1, pp. 3-4).  In its Motion for Partial Summary Judgment, Hibiscus argues that as a matter of law Home Design's damages are limited to its design fees, as awarding Home Design gross construction profits would amount to a windfall not permitted by the Copyright Act.  (Doc. No. 89-1, p. 10).  Because issues of fact remain

as to both the amount of damages and the existence of a causal link between the allegedly infringed designs and the home construction profits, the Court must deny Hibiscus' request for summary judgment on the issue of damages.

The Copyright Act allows a prevailing plaintiff to seek four types of damages: a) actual damages; b) infringer's profits; c) statutory damages; and d) reasonable attorneys' fees.  17 U.S.C. § 504, 505.  Home Design has already conceded that it is not entitled to statutory damages and attorneys' fees, and Hibiscus now argues that Home Design is not entitled to its profits as well.  Section 504(b) of the Copyright Act provides that a prevailing plaintiff may seek "any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages."  *Id*. at § 504(b).  Actual damages "are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act."  H.R. Rep. No. 94-1476, p. 161 (1976), reprinted at 17 U.S.C.A. § 504, p. 189 (West 2005).  In seeking such profits, the copyright owner "is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  *Id*. at § 504(b).  The plaintiff also has the burden of proving that the defendant's gross revenues are specifically attributable to the sale of the infringing works.  *Id*. at § 504(b); *Mackie v. Reiser*, 296 F.3d 909, 915-16 (9th Cir. 2002); *Hamil America, Inc. v. GFI*, 193 F.3d 92, 104, 107-08 (2d Cir. 1999); *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983).  Once the plaintiff has met its burden of showing which revenues are specifically attributable to the infringing plans, the burden shifts to the defendant to present evidence demonstrating

the amount of expenses and profits not attributable to the alleged infringement.  17 U.S.C. § 504(b).

In the case at bar, Hibiscus concedes that Home Design would be entitled to design fees if infringement were proven and thus does not dispute the issue of actual damages. (Doc. No. 89-1 at pp. 10-12).  Hibiscus argues, however, that Home Design is required, and fails, to establish a causal connection between the alleged infringement and Hibiscus' profits from the sales of the allegedly infringing homes.  In response, Home Design argues that it is not required to establish any sort of causation between the alleged infringement and the construction profits, but even if it were, copyright law clearly establishes that seeking Hibiscus' profits is warranted in this situation.  (*See* Doc. No. 95-1 at p. 17).  Home Design maintains that it is only required to prove Hibiscus' gross revenue, at which point the entire burden shifts to Hibiscus to prove its expenses.  (*Id.* at p. 13).

The Court finds that Hibiscus is correct to the extent that it asserts that Home Design is required to at least proffer some evidence of a causal connection between the alleged infringement of the plans at issue and the home construction profits earned by Hibiscus in order to survive summary judgment.  *See e.g.*, *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711-712 (9th Cir. 2004); *Rainey v. Wayne State Univ.*, 26 F.Supp.2d 963, 971-72 (E.D. Mich. 1998); *Home Design Serv. v. A-Plus Homes, Inc.*, Case No. 5:03-cv-255-OC-10GRJ, at *11 (M.D. Fla. Dec. 20, 2004).  However, after examining the pleadings, depositions, and evidence at issue, and drawing all justifiable inferences in favor of the nonmoving party, the Court concludes on this record that Home Design has proffered

sufficient evidence of a causal connection between the alleged infringement and the indirect damages sought to defeat Hibiscus' claim for summary judgment.

Although Home Design offers no direct evidence as to Hibiscus' profits in the sale of the allegedly infringing homes, it does offer evidence of the sale prices of such homes. (*See* Doc. No. 87-6, Ex. C).  Furthermore, Hibiscus does not dispute in its Motion for Partial Summary Judgment that it realized a profit in the sale of such homes.  (*See generally* Doc. No. 89-1, pp. 9-18).  Such evidence creates a justifiable inference that the sales of the homes at issue were profitable for Hibiscus, and that at least a part of the profits could have been attributable to the design of these homes.

Hibiscus offers in support of its argument that the profits from the construction of a home are in no way attributable to the home's design plans evidence which suggests that in general, floor plans are not taken into consideration in the valuation of a home.  (*See, e.g.*, Doc. No. 89-18).  As Home Design points out, however, the cases and testimony cited by Hibiscus are distinguishable.  Furthermore, the Court notes that based on cases with similar factual allegations in the Middle District of Florida, it is not so speculative to find that profits earned by Hibiscus from building infringing homes can be attributed, at least partially, to the home's design.  *See Park Square*, 2005 WL 1027370 at *4, FN4; *A-Plus Homes*, No. 5:03-cv-255-OC-10GRJ, at *11.   Thus, drawing all justifiable inferences in favor of the nonmoving party, the Court finds that Home Design has proffered enough evidence of a causal connection to go forward with its claim for indirect damages.  For these reasons, summary judgment on the issue of the scope of damages is denied.

### C.  Counts I and III of the Complaint

Counts I and III of the Second Amended Complaint stated two additional counts of copyright infringement against Hibiscus based on the alleged infringement of two other home design plans.  (*See* Doc. No. 48, pp. 2-4; 6-9).  As noted in Footnote 1 above, Home Design concedes that Hibiscus is entitled to summary judgment on these claims.  (*See* Doc. No. 87-1, p.2, FN1).  Thus, summary judgment on Counts I and III of the Second Amended Complaint is granted in favor of Hibiscus.

### <u>Conclusion</u>

For the foregoing reasons, it is hereby **ORDERED** as follows:

1.      The Motion for Partial Summary Judgment filed by Plaintiff Home Design Services (Doc. No. 87) is **GRANTED** in part and **DENIED** in part.

      A.      The Motion is **GRANTED** as to the Third, Fourth, Seventh, Eighth, Ninth, and Twelfth affirmative defenses asserted by Defendants Hibiscus Homes of Florida and Pierre Marsan.

      B.      The Motion is **DENIED** as to the extent it seeks summary judgment as to: (i) ownership of the plans at issue; (ii) copying of the plans at issue; (iii) gross revenues; and (iv) the First, Second, Fifth, Sixth, Tenth, Eleventh, and Thirteenth affirmative defenses asserted by Defendants.

2.      The Motion and Memorandum for Partial Summary Judgment filed by

Defendants Hibiscus Homes of Florida, Inc. and Pierre Marsan (Doc. No. 89)

is **GRANTED** in part and **DENIED** in part.

A.      The Motion is **GRANTED** as to (i) Counts I and III of the Amended

Complaint (Doc. No. 48); and (ii) statutory damages and attorneys'

fees.  Plaintiff has conceded that Defendants are entitled to summary

judgment on Counts I and III of the Amended Complaint and as to

Defendants' Thirteenth asserted affirmative defense.  Plaintiff is not

entitled to statutory damages and/or attorneys' fees as a matter of

law.

B.      The Motion is **DENIED** to the extent that it seeks summary judgment

as to: (i) the substantive elements of Plaintiff's copyright claims; and

(ii) the amount and scope of potential liability for damages.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _13th__ day of December,

2005.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

-33-

Copies furnished to:

Counsel of Record

Clerk of Court